JOHN R. KROGER
Attorney General
MARC ABRAMS #89014
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4791
Email: marc.abrams@doj.state.or.us

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| MONICA EMELDI,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF OREGON, an Agency and Instrumentality of the State of Oregon,<br><br>Defendant. | Case No. 6:08-cv-06346 HO<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

INTRODUCTION ..... 1

FACTS ..... 1

STANDARD OF REVIEW ..... 5

ARGUMENT ..... 5

I. Plaintiff's Title IX claim fails because she cannot show a causal connection between allegedly protected acts and any retaliation by the University ..... 5

II. Plaintiff's ORS 659.850 claim fails for the same reasons her Title IX claim fails ..... 7

III. Plaintiff has no contract with the University for financial support or a guaranteed doctoral degree ..... 7

A. No written contract between plaintiff and University promises plaintiff success in the graduate program or perpetual financial support ..... 8

B. Dr. Kame'enui lacked the actual or apparent authority to enter into the alleged contract on behalf of the University ..... 8

C. The alleged oral contract is barred by the Statute of Frauds ..... 10

CONCLUSION ..... 11



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

# TABLE OF AUTHORITIES

## Cases

*Alpha Energy Saver, Inc. v. Hansen*, 381 F.3d 917 (9th Cir. 2004) ........ 5

*Angel v. Reider*, 71 Or. App. 10 (1984) ........ 10

*Barwick v. Celotex*, 736 F.2d 946 (4th Cir. 1984) ........ 2

*Burch v. Regents of the Univ. of California*, 433 F.Supp.2d. 1110 (E.D. Cal. 2006) ........ 6

*Checkley v. Boyd*, 198 Or. App. 110 (1995) ........ 9

*Conklin v. Karban Rock, Inc.*, 94 Or. App. 593 (1989) ........ 10, 11

*Dardanell v. Target Stores*, 16 F.3d 174 (7th Cir. 1994) ........ 2

*Donohoe v. Consolidated Operating & Production Corp.*, 736 F. Supp 845 (N.D. Ill. 1990) ........ 2

*Forrester v. City of Hillsboro*, 156 Or. 89 (1937) ........ 9

*Hansborough v. City of Elkhart Parks & Rec. Dept.,* 802 F. Supp. 199 (N.D. Ind. 1992) ........ 4

*Hulsey v. Lindeman*, 145 Fed. Appx. 193 (9th Cir. 2005) ........ 10

*Jackson v. Birmingham Bd. of Ed.*, 544 U.S. 167 (2005) ........ 5

*Kizer v. Children's Learning Center*, 962 F.2d 608 (7th Cir. 1992) ........ 4

*McMillian v. Svetanoff*, 878 F.2d 186 (7th Cir. 1989) ........ 4

*Meyer Intellectual Properties, Ltd. v. Bodum, Inc.*, 579 F. Supp 2d 790 (N.D. Ill. 2009) ........ 2

*Mitchell v. Toledo Hospital*, 964 F.2d 577 (6th Cir. 1992) ........ 4

*Nakashima v. Oregon State Board of Education*, 344 Or. 496 (2008) ........ 7

*Owen v. Bradley*, 231 Or. 94 (1962) ........ 9

*Pries v. Honda Motor Company,* 31 F.3d 545 (7th Cir. 1994) ........ 2

*Radobenko v. Automated Equipment Corp.*, 520 F.2d 540 (9th Cir. 1975) ........ 2

*Ray v. Henderson*, 217 F.3d 1234 (9th Cir. 2000) ........ 7

*Ruggles v. California Polytechnic State University*, 797 F.2d 782 (9th Cir.1986) ........ 7

*Russell v. Acme-Evans Co.*, 51 F.3d 64 (7th Cir. 1995) ........ 2

*Schuler v. Chronicle Broadcasting Co.*, 793 F.2d 1010 (9th Cir. 1986) ........ 4



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

*Simons v. City of Portland*, 132 Or. App. 74 (1994) .......... 2

*Steckl v. Motorola, Inc.*, 703 F.2d 392 (9th Cir. 1983) .......... 4

*Stevens v. Good Samaritan Hospital*, 264 Or. 200 (1972) .......... 10, 11

*Sullivan v. Massachusetts Mutual Life Ins. Co.*, 802 F. Supp. 716 (D. Conn. 1992) .......... 2

*Tate v. North Pacific College*, 70 Or. 160 (1914) .......... 8

*Waggoner v. City of Garland, Texas*, 987 F.2d 1160 (5th Cir. 1993) .......... 4

*Wiggins v. Barrett & Associates, Inc.*, 295 Or. 679 (1983) .......... 9

*Yasnoff v. Hallick*, 155 Or. App. 474 (1998) .......... 9

**Statutes**

ORS 41.580 .......... 10

ORS 659.850 .......... 7

**United States Code**

28 United States Code § 1746 .......... 2

**Rules and Regulations**

Federal Rules of Civil Procedure 56 .......... 2



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

## INTRODUCTION

In her complaint and her deposition, plaintiff made the argument that the University prematurely ended her academic career because it could not tolerate criticism about the numbers of female faculty at the College of Education. That argument having been debunked, plaintiff now appears to contend that the University's failure to respond as she desired to her filing of grievances is the basis for this lawsuit. This argument is no more credible. Nor is plaintiff's suggestion that she has "partially performed" the supposed oral contract for indefinite financial support, a contention wrong on the law and not supported by the facts.

Plaintiff came to a crossroads with her dissertation advisor, a crossroads related entirely to her unwillingness to take criticism and having nothing to do with discrimination against her personally or female faculty historically. She then refused to approach two professors — Jeff Sprague and Ed Kame'enui — who most logically could have assumed the task of guiding her research. No one at the University prevented her from talking to these two professors. In fact, Prof. Sprague testified that he would have considered chairing plaintiff's committee . . . had he only been approached.

It was not the University or any of its faculty who blocked plaintiff's degree progress. It was plaintiff herself.

Summary judgment is appropriate in this action.

## FACTS

Plaintiff purports to set forth "facts" in detail in her Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Response"), but, with the exception of three references to Dr. Horner's deposition, Response at 7, there is no citation to any asserted "fact" in the Response. The plaintiff's assertions of fact in her Response are actually no more than lawyer



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

argument. Plaintiff does submit an affidavit from counsel attaching exhibits, but not one of those exhibits is referenced in the Response.[1]

Additionally, plaintiff does not even offer citation to her own deposition testimony, instead drafting a "declaration," — a document neither sworn to nor even signed, thus failing to meet the requirements of Fed. R. Civ. P. 56[2] — that has not been subject to counsel's examination, designed to suit the needs of the moment. Even an affidavit, to the extent it conflicts with sworn testimony, is to be disregarded. *Simons v. City of Portland*, 132 Or. App. 74, 84, ftnt. 3 (1994); *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67 (7th Cir. 1995); *Pries v. Honda Motor Company,* 31 F.3d 545 (7th Cir. 1994); *Dardanell v. Target Stores*, 16 F.3d 174 (7th Cir. 1994); *Barwick v. Celotex*, 736 F.2d 946 (4th Cir. 1984); *Sullivan v. Massachusetts Mutual Life Ins. Co.*, 802 F. Supp. 716 (D. Conn. 1992); *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 544 (9th Cir. 1975); *Donohoe v. Consolidated Operating & Production Corp.*, 736 F. Supp 845, 863 (N.D. Ill. 1990). The declaration has no evidentiary value whatsoever.

Even if this Court accepts the declaration, it is almost entirely opinion and legal conclusion rather than fact and, in many of the cases it purports to state facts, it is directly in conflict with plaintiff's deposition or documentary evidence. For example, at the bottom of page 2, the declaration asserts that "the service contact provides that unless I achieve the degree and work in the field for a specified time, I must repay the grant funding which would equate to almost $150,000." As shown in Emeldi dep. Exh. "2," the amount was $101,656. Without foundation, plaintiff adds almost 50% to the purported amount at issue. At the top of that same page, plaintiff sets forth the terms of the purported "oral contract." Not only is the existence of a contract a question of law, not fact, the terms plaintiff sets forth are curiously inconsistent with

---

[1] Exhibit 6 to the Force Affidavit is referenced in the Response at 8; however, the Force Affidavit identifies and attaches only *five* exhibits.

[2] 28 U.S.C. § 1746 permits declarations in lieu of affidavits *only* if signed by the declarant "under penalty of perjury under the laws of the United States of America" and that states the subject matter is "true and correct." *Meyer Intellectual Properties, Ltd. v. Bodum, Inc.*, 579 F. Supp 2d 790 (N.D. Ill. 2009). University has moved to strike the declaration.



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

her inability to detail those terms when under oath. (Emeldi dep. 20:25-28:21.) Similarly, her assertion on page 7 that Prof. Horner "obstructed" her progress is directly in conflict with her sworn testimony in which she was unable to specify any adverse action other than Horner's resignation or to link such acts to any knowledge of her supposed opposition to discrimination.[3]

In her declaration, plaintiff continues to assert that Prof. Sprague talked Prof. Eisert out of chairing plaintiff's committee. As plaintiff is aware, Prof. Sprague gave Prof. Eisert neutral advice on matters of workload and lack of expertise. (Sprague dep. 16:3-21, 20:16-21:18.) There is no evidence of any animus on Prof. Sprague's part. In fact, Prof. Sprague testified that he would have considered chairing plaintiff's committee had plaintiff approached him. (Sprague dep. 18:22-25, 21:19-22:2.) But she did not. (Emeldi dep. Exh. "16.") Sprague's willingness to help is an inconvenient truth plaintiff asks this Court to ignore.

Plaintiff also, for the first time, adds a new name to the cast of supposed villains: Prof. Ken Merrill, whom she contends told Prof. Erin Barton not to chair plaintiff's committee. This is unsupported hearsay. This is also untrue, as plaintiff's own contemporary notes show that Barton was a first-year professor not yet chairing committees. (Emeldi dep. Exh. "16" at 3707.)

Similarly, plaintiff's suggestion that Dean Michael Bullis is in part to blame, Declaration at 9, consists of no more than presumptions that his "friendship" with Prof. Horner was a conflict of interest preventing him from acting appropriately, which is to say, from doing as plaintiff wished. Plaintiff provides no specifics other than to argue, circularly, that the mere act of not agreeing with her on her grievance was an act of retaliation and discrimination. However plaintiff has no evidence that her *prior* actions or speech triggered the outcome in Bullis' response to her grievance.

Nor was Marian Friestad's rejection of plaintiff's contentions an act of impermissible retaliation, as plaintiff implies. (Declaration at 10.) Friestad, in fact, did everything precisely as plaintiff asked at the time, which plaintiff now fails to remember. Friestad, the Vice Provost for

[3] See citations in the University's initial Memorandum at Section I(A)(3)(c).



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Graduate Students and an Associate Dean, was approached by plaintiff regarding personality conflicts with Prof. Horner in October 2007.[4] (Friestad Aff. ¶ 2.) Friestad told plaintiff that Friestad could take one of three paths, two of which plaintiff could determine: Friestad could communicate with Prof. Horner, but only if plaintiff consented; she could keep silent, but then could not pursue a complaint; or, if allegations of sexual harassment or discrimination were involved, then Friestad was required to report the matter. (Friestad Aff. ¶ 3.) At *plaintiff's* request, Friestad talked to Prof. Horner. However, Friestad did not report the matter to the affirmative action office. (Friestad Aff. ¶4.) That was because there was no allegation at that time from plaintiff of harassment or discrimination, only of personality conflict. (Friestad Aff. ¶ 4.) These facts demonstrate that Friestad did not act improperly and that plaintiff misstates the history of events.

Plaintiff also contends that another woman, Emma Martin, retaliated against plaintiff. (Declaration at 10.) She does not suggest what Martin knew or did not know, and what she was retaliating for. Plaintiff did not choose to provide an affidavit or depose Prof. Martin, so Martin's purported statements are inadmissible hearsay.

The remainder of the Declaration is a combination of unfounded assumptions, flights of imagination, unsupported hearsay, and conspiracy theories. It is not based in fact. It is subjective belief, and it is unfounded. As such, it may not defeat summary judgment. *Kizer v. Children's Learning Center*, 962 F.2d 608, 613 (7th Cir. 1992); *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983); *Waggoner v. City of Garland, Texas*, 987 F.2d 1160, 1164 (5th Cir. 1993); *Mitchell v. Toledo Hospital*, 964 F.2d 577, 584 (6th Cir. 1992); *McMillian v. Svetanoff*, 878 F.2d 186 (7th Cir. 1989); *Schuler v. Chronicle Broadcasting Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986); *Hansborough v. City of Elkhart Parks & Rec. Dept.*, 802 F. Supp. 199, 208 (N.D. Ind. 1992).

---

[4] Contrary to the impression plaintiff wishes to leave, this did not occur immediately before Prof. Horner's November 19, 2007 resignation as plaintiff's chair, but a full month earlier.



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

* * *

The University does wish to correct one statement made in the initial Memorandum, based in part on a misunderstanding of counsel and in part on plaintiff's erroneous testimony. In deposition, plaintiff claimed that she continued to date as a student in the COE doctoral program. (Emeldi dep. 13:9-18.) The accurate statement is that, by having stopped pursuing her degree, plaintiff is deemed to have withdrawn from the University. (Force Aff. Exh. "2.") However, plaintiff is eligible for re-admission on petition. (*Id.*) As plaintiff's status changed as a result of her own inaction, which in turn was the result of her not successfully recruiting a dissertation committee chair — something entirely her responsibility — this is a distinction without a legal difference.

## STANDARD OF REVIEW

Plaintiff's recitation of the standard for summary judgment is essentially similar to that of the University. Her citation to *Alpha Energy Saver, Inc. v. Hansen*, 381 F.3d 917 (9th Cir. 2004), and to *Jackson v. Birmingham Bd. of Ed.*, 544 U.S. 167 (2005), while inapposite, do not alter the formula. Material fact must meet material fact to create a conflict. Plaintiff has not created any such conflict, and the University has met its burden.

## ARGUMENT

### I. Plaintiff's Title IX claim fails because she cannot show a causal connection between allegedly protected acts and any retaliation by the University.

Plaintiff suggests that it is "undisputed that the University is subject to the provisions of Title IX and undisputed that plaintiff opposed what she believed to be discrimination on the basis of sex. Plaintiff is half right.

Plaintiff's claim that she was opposing what she believed to be sex discrimination does not stand up to the record she contemporaneously created. When she served as scribe for the group of graduate students, she conceded that they were not alleging any act of discrimination. (Emeldi dep. 238:22-239:3, 240:11-21.) She cannot reverse course now. When plaintiff went to talk to Vice Provost Friestad, she did not make a single allegation that her difficulties were



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

anything more than personality conflicts, not once suggesting discrimination. (Emeldi dep. Exh. "29;" Friestad Aff. ¶ 4.) Plaintiff, quite simply, has not engaged in a protected activity, as is required.[5] *Burch v. Regents of the Univ. of California*, 433 F.Supp.2d. 1110, 1125-27 (E.D. Cal. 2006).

Nor is plaintiff's claim that it can be "fairly disputed" that the University took actions "that made it impossible for [plaintiff] to complete her Ph.D. program" accurate. Response at 12. It was plaintiff who refused to accept the guidance of Prof. Horner, and the record contains no evidence that he resigned as her chair for any reason other than her stance had rendered him ineffective. (Horner Aff. ¶ 3, Force Aff. Exh. "3" at 1-3.) Subsequent to that event, plaintiff's failure properly to recruit a new dissertation chair — by, for example, asking the best qualified individuals and talking with faculty personally and not by a "blast" e-mail — are acts of her own commission, not of the University.

Finally, it may well be accurate for plaintiff to assert that "it is genuinely disputed that those actions were the result * * * of the offense taken by senior faculty of the COE and the graduate school, at the plaintiff's articulation of her belief that she had suffered discrimination or retaliation." Response at 12. However, all plaintiff brings to her side of the scale is a subjective belief that because she did not like outcomes, those outcomes must have been based on her heroics. But those heroics did not actually occur and do not create a genuine dispute of *material fact*. Plaintiff misapprehends that just because she believes a thing does not make it so, and does not defeat summary judgment. Nowhere in the Response does plaintiff provide a basis for finding a causative link between her alleged stands and any act by any University employee.[6]

---

[5] Plaintiff now alternatively argues that the University *perceived* her to have opposed illegal acts, and therefore retaliated against her. The problem with this construct is that the record is devoid of evidence that anyone at any time in the University perceived her to have been opposing discrimination, and plaintiff has provided nothing but her own, unfounded speculation in this regard.

[6] Nor does plaintiff do so in her declaration, which, at pages 7-13, goes into detail about everything plaintiff feels anyone did that offended her, but does not contain a shred of evidence, only conclusory statements that she *believed* these things were retaliation.



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

She has failed to make a showing as required by *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000), and *Ruggles v. California Polytechnic State University*, 797 F.2d 782, 785 (9th Cir.1986), that *but for* her purported protected activity she would not have been subjected to the presumed adverse actions.

Plaintiff should not be allowed to maintain her Title IX claim.

## II. Plaintiff's ORS 659.850 claim fails for the same reasons her Title IX claim fails.

Plaintiff's response to the ORS 659.850 claim is to assert that she was going to move to amend her complaint to clarify the claim related to retaliatory conduct by the University. There are two flaws with this argument. First, plaintiff has *not* so moved, even in the face of this motion for summary judgment. Second, the University's initial Memorandum specifically demonstrated that there was an absence of factual support for a claim of retaliation, both in its discussion of the ORS 659.850 claim and the Title IX claim. *See* initial Memorandum Sections I(A)(2), I(A)(3), II.

Plaintiff does not offer a single specific fact to support her contention.

Plaintiff suggests that the University argues the ORS 659.850 claim is governed by the Title IX claim. Plaintiff misreads the University's argument, which is *not* that ORS 659.850 applies Title XI precedent, but merely that the lack of factual support for the plaintiff's claims produces the same *result* under ORS 659.850 and *Nakashima v. Oregon State Board of Education*, 344 Or. 496 (2008), as it does under Title IX. (*See* initial Memorandum Section II.)

Plaintiff's ORS 659.850 claim fails.

## III. Plaintiff has no contract with the University for financial support or a guaranteed doctoral degree.

Plaintiff now attempts to argue that she should be able to recover against the University because the agents of the University frustrated her ability to complete her contract. However, the evidence shows that if plaintiff's performance was frustrated, she herself created the obstacles, and that, regardless, the contract simply does not provide for the support she alleges.



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

**A. No written contract between plaintiff and University promises plaintiff success in the graduate program or perpetual financial support.**

The core of plaintiff's claim is that the contract at issue is what she refers to as the "grant contract," more accurately titled "Service Agreement for IDEA Scholarship Grant," which has been submitted to this Court with the University's initial Memorandum. (Emeldi dep. Exh. "7.") The problem with plaintiff's construct is that nowhere in that document are their terms expressing what she contends. There is absolutely no guarantee of continued funding or funding at a specific level. The obligation to maintain satisfactory progress is the *student's* obligation. The requirement to remain enrolled in a course of study is the *student's* obligation.

Plaintiff suggests frustration of purpose allows her recovery in this situation. However, she fails to explain how it is the University's fault that she declined to asked Prof. Kame'enui — her one-time advisor — to serve as dissertation chair. She fails to explain how it is the University's fault that she failed to ask Prof. Sprague — who expressed a willingness to take on the task — to serve as dissertation chair. Indeed, she fails to explain why, as a matter of law, the University should be held responsible for her alienation of Prof. Horner. There is no legal basis to require Prof. Horner, or any professor, to chair or remain as chair of a dissertation committee if they feel their effectiveness has been destroyed, as Prof. Horner felt. (Horner Aff. ¶ 3, Force Aff. Exh. "3" at 1-3.).

Plaintiff's failure to complete her program must be owned by plaintiff, both as a matter of fact and of law. *Tate v. North Pacific College*, 70 Or. 160, 165 (1914).

**B. Dr. Kame'enui lacked the actual or apparent authority to enter into the alleged contract on behalf of the University.**

Curiously, plaintiff now contends that she "was employed by Ed Kame'enui in his private business * * * ." Plaintiff's Concise Statement No. 1. She provides no citation for this assertion but, if true, it would end the contract claim as one brought against the *University*.

If the plaintiff is still focused on her original contention — that Prof. Kame'enui entered into a contract on behalf of the University — she has failed to meet her threshold of proof.



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Plaintiff cannot contend that Prof. Kame'enui had actual authority to enter into the alleged contract. He did not. She therefore asserts that whether the professor had "apparent" authority is an issue of fact. Again, plaintiff is mistaken. As previously noted, Prof. Kame'enui held no general or COE administrative position at the University, and plaintiff was aware of this. (Emeldi dep. 95:5-8, 97:25-98:4; Kame'enui Aff. ¶ 3.) The University catalog clearly states there is no contract between a student and the University. (Emeldi dep. Exh. "5.") Plaintiff therefore could not reasonably believe that Prof. Kame'enui could bind the University any more than any of approximately 2000 professors could bind the University.

Regardless, general agency principles are not applied when the actor is the state.[7] In Oregon, even if Prof. Kame'enui did purport to offer a contract on the terms plaintiff asserts, it would be void and not available for ratification. *Yasnoff v. Hallick*, 155 Or. App. 474, 479 (1998); *Forrester v. City of Hillsboro*, 156 Or. 89, 91 (1937); OAR 580-004-0005. Plaintiff has not responded to either *Yasnoff* or the regulation that governs this situation. Nor are plaintiff's citations to *Checkley v. Boyd*, 198 Or. App. 110 (1995), and to *Owen v. Bradley*, 231 Or. 94 (1962), to the contrary. Those general statements of when an implied contract might be found are superseded by the more specific inquiry of when a *government* can be bound.[8]

Plaintiff has no evidence that Prof. Kame'enui is responsible for overall financial aid awards; in fact, as she knew, he was not. (Kame'enui Aff. ¶¶ 3, 4; Emeldi dep. Exh. "6." ["Admission to the Special Education doctoral program does not guarantee funding or support."]) In light of plaintiff's knowledge of Prof. Kame'enui's authority limitations from her

---

[7] Plaintiff makes no response to the governing rule in *Wiggins v. Barrett & Associates, Inc.*, 295 Or. 679 (1983), laying down a five-part test for binding agents of a government, a test that, as set forth in the initial Memorandum, plaintiff cannot meet as Prof. Kame'enui had no vestiges of apparent authority and there was a specific regulation putting the alleged promise beyond the professor's authority.

[8] Similarly, plaintiff's citation to UCJI 30.04C is of no import. That an apparent authority question *can* go to a jury is irrelevant as to whether this specific one should. The mere existence of a uniform jury instruction on a subject does not take any such subject outside the purview of a motion for summary judgment.



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

admission letter, she cannot credibly contend she believed he had apparent authority to make the purported promise. The letter, dating to February 2004 — months before plaintiff started her program — unambiguously negates the credibility of her claim of reliance.

In any event, plaintiff merely contends that Prof. Kame'enui represented that funding would be available for a four or five year period, and there is no suggestion Emeldi was not funded for the five academic years from 2004-05 through 2008-09 either by Vanguard or a graduate teaching assistantship. (Concise Statement of Material Fact No. 5, admitted by plaintiff; Kame'enui Aff ¶ 5; Emeldi dep. 65:5-8, Exhs. "2," "10," "11," "13," and "14."). Although University does not believe any contract exists or is enforceable, if this Court finds a contract, it should also find that the terms have been fulfilled.

The breach of contract claim should be dismissed.

**C. The alleged oral contract is barred by the Statute of Frauds.**

Plaintiff spends only a single sentence responding to the University's briefing on the Statute of Frauds, asserting that part performance takes an oral contract out of ORS 41.580 and citing to *Stevens v. Good Samaritan Hospital*, 264 Or. 200 (1972).[9]

*Stevens* is not good law. It has been cited to only three times in the thirty-eight years since its issuance, and each of the three rejected applying *Stevens*. *Hulsey v. Lindeman*, 145 Fed. Appx. 193 (9th Cir. 2005); *Conklin v. Karban Rock, Inc.*, 94 Or. App. 593 (1989); *Angel v. Reider*, 71 Or. App. 10 (1984).

The court in *Angel* noted that the doctrine of part performance was only applicable where a party acted *solely* in reliance on the oral agreement. There is no evidence before this Court that plaintiff only enrolled in this prestigious program because someone promised infinitely and without limitation to foot the bill. In fact, plaintiff even testified that her expectation in terms of getting her degree was "four, perhaps five years," and perhaps as few as three. (Emeldi dep.

[9] By raising only this argument, plaintiff implicitly concedes she has no memorandum signed by a University representative taking this "contract" outside the Statute of Frauds.



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

21:2-14; 68:7-22.) So long as she was enrolled at the University, she *did* receive funding. (Emeldi dep. 65:5-8, Exhs. "2," "10," "11," "13," "14.") That funding came from Vanguard from the 2004-05 school year through the 2007-08 year, four full years. (Kame'enui Aff. ¶¶ 2, 6; Emeldi dep. Exh. "2.") She was also supported through teaching assistantships. (Emeldi dep. 80:14-20, 202:20-203:12, 204:18-206:1, Exh. "29" at 908.)

The *Conklin* court notes that *Stevens* discusses equity, and the application of the doctrine of part performance requires fraud. No fraud has been alleged, let alone established, in this action. No actor has obtained a benefit. Regardless, plaintiff seeks only damages, not an injunction or a declaration. This is not a case in equity.

Each annual grant of scholarship was no more than a single year commitment. (Emeldi dep Exhs. "10," "11.") Emeldi has no basis to suggest anything else. (Emeldi dep. 31:15-22.) For the reasons set forth in the University's initial Memorandum and herein, the Statute of Frauds applies and bars maintenance of this claim.

## CONCLUSION

Plaintiff continues to conflate subjective belief with fact. The facts are simple. She had no contract with the University for indefinite financial aid. Nor did anyone at the University discriminate against her, and disagreeing with plaintiff as to whether there has been discrimination does not itself become discrimination, which is really what plaintiff is suggesting at the heart of this lawsuit. Under plaintiff's construct, the mere filing of a grievance would require it to be granted, or else further discrimination would have occurred. Obviously, that is not the law.



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

For the foregoing reasons, summary judgment should be granted and this action dismissed with prejudice.[10]

DATED this 7th day of May, 2010.

Respectfully submitted,

JOHN R. KROGER
Attorney General

MARC ABRAMS #89014
Senior Assistant Attorney General
Trial Attorney
Tel (503) 947-4700
Fax (503) 947-4793
marc.abrams@doj.state.or.us
Of Attorneys for Defendant

[10] Plaintiff suggests, Response at 10, that if the federal claim is dismissed, the state claims should be returned to state court. This would only further delay a case that will not, under any circumstance, be tried (if trial is needed) before its second anniversary. As the Court is aware, it has the authority to retain jurisdiction under such circumstances, and should do so if required.

**CERTIFICATE OF SERVICE**

I certify that on May 7, 2010, I served the foregoing REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT upon the parties hereto by the method indicated below, and addressed to the following:

David C. Force
96 E Broadway Ste 2
PO Box 10972
Eugene OR 97440
Of Attorneys for Plaintiff

___ HAND DELIVERY
___ MAIL DELIVERY
___ OVERNIGHT MAIL
___ TELECOPY (FAX) **541 686-1594**
___ E-MAIL **forcelaw@aol.com; forcelawgm@aol.com**
✓ E-FILE

MARC ABRAMS #89014
Senior Assistant Attorney General
Trial Attorney
Tel (503) 947-4700
Fax (503) 947-4793
marc.abrams@doj.state.or.us
Of Attorneys for Defendant