JOHN R. KROGER
Attorney General
MARC ABRAMS #89014
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4791
Email: marc.abrams@doj.state.or.us

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| MONICA EMELDI,<br><br>        Plaintiff,<br><br>    v.<br><br>UNIVERSITY OF OREGON, an Agency and<br>Instrumentality of the State of Oregon,<br><br>        Defendant. | Case No. 6:08-cv-06346 HO<br><br>**SECOND AFFIDAVIT OF MARC ABRAMS<br>IN SUPPORT OF MOTION FOR SUMMARY<br>JUDGMENT** |

STATE OF OREGON      )
                                        ) ss.
County of Marion         )

    I, Marc Abrams, being duly sworn, depose and state:

    1.      I am a Senior Assistant Attorney General in the Trial Division of the State of

Oregon Department of Justice, and am counsel of record for the University of Oregon.

Page 1 -    SECOND AFFIDAVIT OF MARC ABRAMS IN SUPPORT OF MOTION FOR SUMMARY
            JUDGMENT
            MA/jlb/1995433-v2

2.      Attached to this affidavit as Exhibit "A" are true and correct copies of excerpts of the deposition of Cindy Herr, taken April 5, 2010.

3.      Attached to this affidavit as Exhibit "B" are true and correct copies of excerpts of the deposition of Jeffrey Sprague, taken April 5, 2010.

4.      Attached to this affidavit as Exhibit "C" are true and correct copies of excerpts of the deposition of Robert Horner, taken February 16, 2010.

DATED this _____ 7th day of May, 2010.

_____
MARC ABRAMS
Senior Assistant Attorney General

SUBSCRIBED AND SWORN to before me this 7th day of May, 2010.

OFFICIAL SEAL
JEANNIE L BASINGER
NOTARY PUBLIC-OREGON
COMMISSION NO. A435577
MY COMMISSION EXPIRES JAN. 11, 2013

_____
Notary Public for Oregon
My Commission Expires:  1-11-13

Page 2 -    SECOND AFFIDAVIT OF MARC ABRAMS IN SUPPORT OF MOTION FOR SUMMARY
            JUDGMENT
            MA/jlb/1995433-v2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MONICA EMELDI,                          )

              Plaintiff,            )

    vs.                                 )No. 08-6346-HO

UNIVERSITY OF OREGON, an Agency)

and Instrumentality of the       )

State of Oregon,                        )

              Defendant.            )


DEPOSITION OF CINDY HERR

April 5th, 2010

Monday

1:45 P.M.


    THE DEPOSITION OF CINDY HERR was taken at
Johnson Hall, the University of Oregon, Eugene,
Oregon, before Robin Cassidy-Duran, CSR-RPR,
Certified Shorthand Reporter in and for the State of
Oregon.

Exhibit A, Page 1 of 5
Second Affidavit of Marc Abrams
Emeldi v. University of Oregon
U.S. District Court Case No. 6:08-cv-06346-HO

Cindy Herr                                    6

```
 1   one thing at a time, in lawyer language.
 2              THE WITNESS:   Okay.
 3        A.    Not to the best of my recollection.
 4   BY MR. FORCE:
 5        Q.    Okay.  Well, do you recall ever telling
 6   Monica Emeldi that you had been present at a meeting
 7   where Dr. Horner had stated something to the effect
 8   of changing Ms. Emeldi's degree track from a Ph.D.
 9   track to a doctorate of education track?
10        A.    No.
11        Q.    Do you know Monica Emeldi?
12        A.    Yes.
13        Q.    How do you know her?
14        A.    I met her when we were both taking a
15   psychology statistics class in the fall 2006.
16        Q.    Did she ever ask you to be a member of her
17   dissertation committee?
18        A.    She asked me if I could serve on her
19   dissertation committee.
20        Q.    Did that occur before or after you were in
21   that class with her in the fall of 2006?
22        A.    I don't recall if it was during that time
23   or afterwards.  It would not have been before.
24        Q.    Okay.  What's your present position?
25        A.    I am an assistant professor of special
```

ccreporting.com
541-485-0111

Exhibit A, Page 2 of 5
Second Affidavit of Marc Abrams
Emeldi v. University of Oregon
U.S. District Court Case No. 6:08-cv-06346-HO

Cindy Herr                                    10

1    of 2006?

2        A.    I believe that it was after that.

3        Q.    Were you thinking about Monica Emeldi as

4    one of the people who believed that they were not

5    getting sufficient support?

6        A.    I don't remember if I was thinking that.

7    She was not the reason I went to talk to Dr. Bullis.

8        Q.    What was the reason you went and talked to

9    Dr. Bullis?

10       A.    It was concerning a different student.

11       Q.    Do you recall whether you've had any email

12   communications with any other faculty members

13   regarding Monica Emeldi?

14       A.    I have not had any communication through

15   emails with other faculty members about Monica.

16       Q.    Have you had conversations with other

17   faculty members about Monica specifically?

18       A.    No.  I was very careful not to do that.

19       Q.    Why?

20       A.    Because I didn't know anything except

21   Monica's version of information.

22             MR. FORCE:  All right.  That's all I

23   have.

24   / / / / /

25   / / / / /

Exhibit A, Page 3 of 5
Second Affidavit of Marc Abrams
Emeldi v. University of Oregon
U.S. District Court Case No. 6:08-cv-06346-HO

Cindy Herr                                        11

```
 1                        EXAMINATION

 2   BY MR. ABRAMS:

 3      Q.     I have a few questions, Dr. Herr.

 4   Mr. Force asked you about the conversation you had

 5   with Dean Bullis about the difficulties women were

 6   facing in the special education doctoral program.

 7            At any time did you do an examination to

 8   empirically determine whether they were taking

 9   longer to get a degree or not getting a degree

10   relative to male Ph.D. candidates in special ed?

11      A.     No, I did not.

12            MR. ABRAMS:  No further questions.

13

14                        EXAMINATION

15   BY MR. FORCE:

16      Q.     Well, let me follow up on that.  Was it

17   your observation that women Ph.D candidates were

18   achieving their degrees with the same rate as males?

19      A.     I did not look into whether males were

20   having difficulty or not, so I can't make that

21   comparison, and didn't make that comparison at the

22   time.

23            MR. FORCE:  All right.  Thank you.

24            MR. ABRAMS:  No further questions.

25            (Deposition concluded at 1:59 p.m.)
```

Exhibit A, Page 4 of 5
Second Affidavit of Marc Abrams
Emeldi v. University of Oregon
U.S. District Court Case No. 6:08-cv-06346-HO

State of Oregon    )
                   )        ss.
County of Lane     )


    I, Robin Cassidy-Duran, CSR-RPR, a Certified Shorthand Reporter for the State of Oregon, certify that the witness was sworn and the transcript is a true record of the testimony given by the witness; that at said time and place I reported all testimony and other oral proceedings had in the foregoing matter; that the foregoing transcript consisting of 11 pages contains a full, true and correct transcript of said proceedings reported by me to the best of my ability on said date.

    If any of the parties or the witness requested review of the transcript at the time of the proceedings, such correction pages are attached.

    IN WITNESS WHEREOF, I have set my hand and CSR seal this 14th day of April 2010, in the City of Eugene, County of Lane, State of Oregon.




Robin Cassidy-Duran, CSR-RPR

CSR No. 90-0090

Exhibit A, Page 5 of 5
Second Affidavit of Marc Abrams
Emeldi v. University of Oregon
U.S. District Court Case No. 6:08-cv-06346-HO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MONICA EMELDI,                          )

            Plaintiff,          )

    vs.                                )No. 08-6346-HO

UNIVERSITY OF OREGON, an Agency)

and Instrumentality of the      )

State of Oregon,                      )

            Defendant.          )


DEPOSITION OF JEFFREY SPRAGUE

April 5th, 2010

Monday

1:02 P.M.


    THE DEPOSITION OF JEFFREY SPRAGUE was taken
at Johnson Hall, the University of Oregon, Eugene,
Oregon, before Robin Cassidy-Duran, CSR-RPR,
Certified Shorthand Reporter in and for the State of
Oregon.

Exhibit B, Page 1 of 7
Second Affidavit of Marc Abrams
Emeldi v. University of Oregon
U.S. District Court Case No. 6:08-cv-06346-HO

1  the hall from me.

2  BY MR. FORCE:

3      Q.    Do you have any recollection of the

4  conversation you did have with Ms. Eisert about

5  Monica Emeldi's need for a new dissertation chair?

6      A.    Yes.

7      Q.    Just go ahead, in your own words, what you

8  remember of the conversation -- both what you said

9  and what she said.

10     A.    Yes.  I recall we talked -- pretty common.

11 We talked about what I understand to be the proposed

12 content of Monica's dissertation, and Debby was

13 asking me, you know, as a colleague, what was my

14 recommendation regarding her workload, her ability

15 to be a support relative to the content area.

16          And we agreed, given Debby's expertise,

17 which is primarily in developmental disabilities --

18 she is a clinical psychologist -- that the focus of

19 Monica's work, it wasn't appropriate for her to be a

20 chair at that level, not being a content expert in

21 that area.

22     Q.    Who would be a content expert in the area

23 of Ms. Emeldi's dissertation?

24     A.    Me, Rob Horner.  At the time, our

25 colleague George Sugai, although George has moved

Exhibit B, Page 2 of 7
Second Affidavit of Marc Abrams
Emeldi v. University of Oregon
U.S. District Court Case No. 6:08-cv-06346-HO

1    rephrase and clean that question up?

2    BY MR. FORCE:

3        Q.    I'm just trying to find out who in the

4    University is tasked to monitor whether people have

5    dissertation committees and dissertation chairs and

6    whether they are making progress.

7        A.    There's an academic secretary that keeps

8    track of the details.  I don't fully understand, but

9    the graduate school is also notified at those key

10   points.  One is advancement to candidacy and then

11   the other approval of the dissertation proposal, and

12   then final approval of the dissertation.

13       Q.    Okay.  Who is the academic secretary?

14       A.    Currently it is Emily Cornell, although

15   she was not here -- She is relatively new.  I don't

16   know exactly when she started but --

17       Q.    Do you recall who her predecessor may have

18   been?

19       A.    Probably Melissa Finch, who actually still

20   works in the department, but she has a different

21   role.

22       Q.    If you were asked today by Ms. Emeldi

23   whether you would serve as her chair, would you do

24   so?

25       A.    Yes, I would consider it.

Exhibit B, Page 3 of 7
Second Affidavit of Marc Abrams
Emeldi v. University of Oregon
U.S. District Court Case No. 6:08-cv-06346-HO

1    that frame, I always defer to anyone that's a chair.

2              You want to sort of put that back on the

3    student and the chair to narrow it down, so I'd

4    certainly give an opinion but, from my perspective,

5    the final two pieces are the chair and student need

6    to come to the committee basically saying this is

7    where we've narrowed it to, and then the committee

8    collectively approves or disapproves if there would

9    be major changes to the content.

10             MR. FORCE:  All right.  Thanks.

11             MR. ABRAMS:  Okay.  I have a couple of

12   questions.

13

14                  EXAMINATION

15   BY MR. ABRAMS:

16     Q.    Dr. Sprague, did you explicitly recommend

17   that Dr. Eisert not take chairmanship of

18   Ms. Emeldi's committee?

19     A.    I'd really characterize it as a collegial

20   conversation.  Debby works with me, not for me so --

21   I think she felt some trepidation because of what I

22   already said just relatively to the content and her

23   workload and that sort of thing.

24     Q.    Well, when you say workload, what were the

25   workload concerns?

Exhibit B, Page 4 of 7
Second Affidavit of Marc Abrams
Emeldi v. University of Oregon
U.S. District Court Case No. 6:08-cv-06346-HO

1      A.    Well, Debby has a unique position.  She

2  works about three-quarter time for the Child

3  Development & Rehab Center, so she actually

4  functions as a traditional psychologist in that

5  entity, which is actually affiliated with Oregon

6  Health Sciences University.

7           And she has, again, roughly 20 to 25

8  percent -- I don't -- again, I don't -- her FTE is

9  actually under -- it is in the same building as the

10  University Center of Excellence on Developmental

11  Disabilities.  It used to be called the University

12  Affiliated Program, and she has a role in basically

13  running that grant so --

14      Q.    And were you concerned about the amount of

15  time that it would take her to chair Ms. Emeldi's

16  committee?

17      A.    Yes.  Time and, really, expertise to drill

18  down the content level.

19      Q.    Mr. Force asked would you be willing to

20  chair Ms. Emeldi's committee if she came to you

21  today.

22           Did Ms. Emeldi ever come to you and ask

23  you to chair her committee?

24      A.    Not that I recall.

25      Q.    Okay.  Had she done so, would you have

Exhibit B, Page 5 of 7
Second Affidavit of Marc Abrams
Emeldi v. University of Oregon
U.S. District Court Case No. 6:08-cv-06346-HO

Jeffrey Sprague                     22

```
 1    been willing to consider it back in 2007?
 2         A.    Yes, I would have.
 3               MR. ABRAMS:   Okay.   No further
 4    questions.   Thank you.
 5               MR. FORCE:   Okay.   Nothing more.
 6               (The deposition was concluded
 7               at 1:32 p.m.)
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Exhibit B, Page 6 of 7
Second Affidavit of Marc Abrams
Emeldi v. University of Oregon
U.S. District Court Case No. 6:08-cv-06346-HO

23

State of Oregon      )
                     )        ss.
County of Lane       )


   I, Robin Cassidy-Duran, CSR-RPR, a Certified

Shorthand Reporter for the State of Oregon, certify

that the witness was sworn and the transcript is a

true record of the testimony given by the witness;

that at said time and place I reported all testimony

and other oral proceedings had in the foregoing

matter; that the foregoing transcript consisting of

22 pages contains a full, true and correct

transcript of said proceedings reported by me to the

best of my ability on said date.

   If any of the parties or the witness requested

review of the transcript at the time of the

proceedings, such correction pages are attached.

   IN WITNESS WHEREOF, I have set my hand and CSR

seal this 18th day of April 2010, in the City of

Eugene, County of Lane, State of Oregon.




Robin Cassidy-Duran, CSR-RPR

CSR No. 90-0090

Exhibit B, Page 7 of 7
Second Affidavit of Marc Abrams
Emeldi v. University of Oregon
U.S. District Court Case No. 6:08-cv-06346-HO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MONICA EMELDI,                          )

              Plaintiff,              )

    vs.                                 )No. 08-6346-HO

UNIVERSITY OF OREGON, an agency)

and Instrumentality of the         )

State of Oregon,                        )

              Defendant.              )


DEPOSITION OF ROBERT H. HORNER

February 16th, 2010

Tuesday

1:30 P.M.


THE DEPOSITION OF ROBERT H. HORNER was
taken at CC Reporting & Videoconferencing, 172 East
8th Avenue, Eugene, Oregon, before Robin
Cassidy-Duran, CSR-RPR, Certified Shorthand Reporter
in and for the State of Oregon.

Exhibit C, Page 1 of 11
Second Affidavit of Marc Abrams
Emeldi v. University of Oregon
U.S. District Court Case No. 6:08-cv-06346-HO

Rob Horner                                          16

1   Assuming facts not in evidence, and the recitation

2   leading up to the question.  You can go ahead and

3   answer the question.

4   BY MR. FORCE:

5       Q.    Do you recall in October or November of

6   2007 talking to Marian Friestad about Monica Emeldi?

7       A.    I don't recall the date, but I do recall a

8   conversation with Marian Friestad in which she

9   informed me that Ms. Emeldi had filed a concern

10  related to her moving forward.

11      Q.    Okay.  Where was that conversation between

12  yourself and Ms. Friestad?

13      A.    It was on the telephone.

14      Q.    Okay.  Did you ever see any documents that

15  Ms. Emeldi had given Ms. Friestad in connection with

16  her meeting with Marian Friestad?

17      A.    No.

18      Q.    Did Ms. Friestad share with you the

19  contents of any documents that she received from

20  Ms. Emeldi?

21      A.    Dr. Friestad did not share with me the

22  contents of documents.  She simply told me that

23  there was a concern and she asked -- basically she

24  did most of the talking and she asked me for

25  documentation.

Exhibit C, Page 2 of 11
Second Affidavit of Marc Abrams
Emeldi v. University of Oregon
U.S. District Court Case No. 6:08-cv-06346-HO

Rob Horner                                    29

1    too?

2        A.      That is right.

3        Q.      Did you recommend at a faculty meeting of

4    some kind on November 27, 2007, that Ms. Emeldi be

5    directed to obtain a doctorate of education degree

6    rather than a Ph.D. because she intended to work in

7    a clinical applied setting?

8        A.      I don't remember that.

9        Q.      Do you remember attending any kind of a

10   faculty meeting on November 27, 2007?

11       A.      No.

12       Q.      Do you keep records of your attendance of

13   faculty meetings?

14       A.      I don't.

15       Q.      What kinds of faculty meetings are held in

16   the College of Education in which degrees to be

17   awarded doctoral students are discussed?

18       A.      The doctoral committee meetings.

19       Q.      Okay.  As opposed to -- are you talking

20   about a doctoral committee -- Is there a doctoral

21   committee for the School of Education?

22       A.      No.  Doctoral committee per department, so

23   the special education doctoral committee.

24       Q.      Okay.  See if this refreshes your

25   recollection.  This November 27, 2007, meeting --

 1      A.     That's a different question.

 2             MR. ABRAMS:   He is right.

 3             MR. FORCE:   It is?   Okay.

 4   BY MR. FORCE:

 5      Q.     Well, I'll ask you why first.

 6      A.     I received a memo from Ms. Emeldi

 7   indicating that she was identifying me as a barrier

 8   to her advancement and indicating that she was

 9   concerned about my unwillingness to move her

10   doctoral committee forward.

11             It is completely a student's prerogative

12   who they choose to be their doctoral chair, and we

13   clearly had a disagreement about the quality of the

14   doctoral proposal, the dissertation proposal and, as

15   such it seemed that the most reasonable thing for me

16   to do was to step aside.

17             She identified me as a barrier, and I

18   wished her well and encouraged her to do what she

19   was going to do.   Notice at the bottom I stayed as

20   her program advisor simply because her program

21   committee had already done most of its process and

22   the only task that she had remaining was to submit

23   her competency portfolio and have that reviewed by

24   the committee.

25      Q.     If it was the student's prerogative to

Exhibit C, Page 4 of 11
Second Affidavit of Marc Abrams
Emeldi v. University of Oregon
U.S. District Court Case No. 6:08-cv-06346-HO

1    choose the members of their dissertation

2    committee --

3        A.      That's not what I said.

4        Q.      Okay.   Correct me.   What was wrong with

5    that?

6        A.      The student chooses the dissertation

7    chair.

8        Q.      Okay.

9        A.      The chair, with the student, then selects

10   the dissertation committee.   That committee must be

11   approved by the graduate school.

12       Q.      Okay.   Well, if it is the student's

13   prerogative to select the chair, and Ms. Emeldi had

14   not asked you to step aside or chosen anyone else to

15   be the dissertation chair, had you reached a

16   conclusion that you did not wish to be her

17   dissertation chair?

18       A.      What I concluded was exactly what I said:

19   It is my choice to continue as a chair or not

20   continue as a chair.

21            She sent me an email or a memo -- she gave

22   me a memo indicating that she was significantly

23   concerned that I was a barrier to her advancement.

24   That is not a role I am interested in playing,

25   therefore it seemed that the logical step was for

Exhibit C, Page 5 of 11
Second Affidavit of Marc Abrams
Emeldi v. University of Oregon
U.S. District Court Case No. 6:08-cv-06346-HO

1    her to work with someone who would be able to

2    promote her objectives.  I chose to stop being the

3    chair of her dissertation committee.

4        Q.    Okay.  Did you communicate that fact to

5    others -- anyone other than Monica Emeldi that you

6    had resigned?

7        A.    I would have at the next doctoral

8    committee meeting indicated that I was no longer the

9    chair of her committee, whenever that happened.

10       Q.    Did you discuss at any point with other

11   faculty members whether they wished to become her

12   dissertation chair?

13       A.    No.

14       Q.    Did any other faculty members contact you

15   and ask why you were no longer her dissertation

16   chair?

17       A.    No.

18       Q.    Did you tell the people at the next

19   doctoral committee meeting why you had resigned as

20   her dissertation chair?

21       A.    I don't recall.

22       Q.    Well, you testified a minute ago that you

23   do not recall discussing at that doctoral committee

24   meeting a change in direction from a Ph.D. track to

25   a doctor of education track.

Exhibit C, Page 6 of 11
Second Affidavit of Marc Abrams
Emeldi v. University of Oregon
U.S. District Court Case No. 6:08-cv-06346-HO

1    annual status reports to all students in the

2    program.  Every doctoral student in the special ed

3    program received a memo like this from their program

4    committee.

5         Q.    Do you ever recall having a conversation

6    with anyone about the advisability of Ms. Emeldi

7    seeking a doctor of education degree instead of a

8    Ph.D.?

9         A.    No.

10        Q.    Did you ever talk to Monica Emeldi about

11   that possibility?

12        A.    Not that I recall.

13        Q.    Okay.  Do you recall her ever suggesting

14   to you that she would prefer -- or that she was

15   considering changing her program from a Ph.D.

16   program to a doctor of education program?

17        A.    I don't recall.

18                   (Deposition Exhibit No. 3

19                    marked for identification.)

20   BY MR. FORCE:

21        Q.    Go ahead and take a look at that and then

22   I will ask you some questions about it.

23        A.    (Pause.)

24                   (A discussion was had off

25                    the record.)

Exhibit C, Page 7 of 11
Second Affidavit of Marc Abrams
Emeldi v. University of Oregon
U.S. District Court Case No. 6:08-cv-06346-HO

1    BY MR. FORCE:

2        Q.    Have you ever seen a copy of this document

3    before?

4        A.    No.

5        Q.    Have you ever heard about the existence of

6    this document before?

7        A.    Yes.

8        Q.    How did you hear about it before?

9        A.    Dean Bullis told me -- when I received the

10   call from Dr. Friestad about a problem, one of my

11   concerns was that a not-quite-grievance situation

12   had gone to the dean of the graduate school rather

13   than following University policy.

14             There had not been a presentation to the

15   faculty member, to the department head, to the dean,

16   from what I understood.

17             I also contacted the dean because I

18   thought that something of that nature should be

19   something that he would be concerned about, and at

20   that point he said -- that was the point at which he

21   told me there had been a memo, but he did not tell

22   me the content -- a memo in which students had

23   indicated changes that needed to occur within the

24   college.

25        Q.    Did he mention, among those changes, a

Exhibit C, Page 8 of 11
Second Affidavit of Marc Abrams
Emeldi v. University of Oregon
U.S. District Court Case No. 6:08-cv-06346-HO

Rob Horner                                              39

1   request that there be more qualified women hired in

2   tenured faculty positions in special education?

3       A.    He didn't.  But I would totally support

4   that.  In fact, I have been the chair of special

5   committees where we went out and recruited and hired

6   women in the College of Education.

7       Q.    How many tenured female faculty members

8   are there in special education now?

9       A.    Well, the Department of Special Education

10  includes Special Education and Communication

11  Disorders and the School of Psychology, so there are

12  quite a few.

13          I think four in Special Education, three

14  in the School of Psychology, four in Communication

15  Disorders.

16      Q.    Who are the ones in Special Education?

17      A.    Renee Van Norman.

18      Q.    Pardon me?

19      A.    I would want to get their names right.  I

20  would have to go back and look.

21      Q.    Okay.  You're certain about

22  Ms. Van Norman?

23      A.    Yes.

24      Q.    Were you the head of the Department of

25  Special Education in 2007?

Exhibit C, Page 9 of 11
Second Affidavit of Marc Abrams
Emeldi v. University of Oregon
U.S. District Court Case No. 6:08-cv-06346-HO

1    A.    I do not think so.  I was the department
2  head for five years, but that was a while ago.
3    Q.    Okay.
4    A.    Again, that would be in my vitae.
5    Q.    Okay.
6    A.    I think Mike Benz may have been the
7  department head.
8    Q.    Okay.
9    A.    But I'm not sure exactly when he left.
10    Q.    Okay.  Well, do you recall what Mr. Bullis
11  said about a document during that conversation you
12  just referred to?
13    A.    He told me that there was a document that
14  had requested a number of changes within the
15  college.
16    Q.    Did he tell you that the document was
17  authored by Ms. Emeldi?
18    A.    Yes.  Actually, he said it was from a
19  group of students.  He identified it as coming from
20  her, but representing a group that -- my
21  understanding is that he actually requested and
22  invited this, at least from what I understood from
23  his comments.
24    Q.    Okay.  How long have you served on the
25  same faculty as Mr. Bullis -- Dr. Bullis?

Exhibit C, Page 10 of 11
Second Affidavit of Marc Abrams
Emeldi v. University of Oregon
U.S. District Court Case No. 6:08-cv-06346-HO

46

State of Oregon      )
                     )        ss.
County of Lane       )


   I, Robin Cassidy-Duran, CSR-RPR, a Certified

Shorthand Reporter for the State of Oregon, certify

that the witness was sworn and the transcript is a

true record of the testimony given by the witness;

that at said time and place I reported all testimony

and other oral proceedings had in the foregoing

matter; that the foregoing transcript consisting of

45 pages contains a full, true and correct

transcript of said proceedings reported by me to the

best of my ability on said date.

   If any of the parties or the witness requested

review of the transcript at the time of the

proceedings, such correction pages are attached.

   IN WITNESS WHEREOF, I have set my hand and CSR

seal this 3rd day of March 2010, in the City of

Eugene, County of Lane, State of Oregon.





Robin Cassidy-Duran, CSR-RPR

CSR No. 90-0090

ccreporting.com
541-485-0111

Exhibit C, Page 11 of 11
Second Affidavit of Marc Abrams
Emeldi v. University of Oregon
U.S. District Court Case No. 6:08-cv-06346-HO

## CERTIFICATE OF SERVICE

I certify that on May ⎤ , 2010, I served the foregoing SECOND AFFIDAVIT OF

MARC ABRAMS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT upon the

parties hereto by the method indicated below, and addressed to the following:

David C. Force
96 E Broadway Ste 2
PO Box 10972
Eugene OR  97440
     Of Attorneys for Plaintiff

\_\_\_ HAND DELIVERY
\_\_\_ MAIL DELIVERY
\_\_\_ OVERNIGHT MAIL
\_\_\_ TELECOPY (FAX) **541 686-1594**
\_\_\_ E-MAIL  **forcelaw@aol.com;**
         **forcelawgm@aol.com**
√ E-FILE



MARC ABRAMS #89014
Senior Assistant Attorney General
Trial Attorney
Tel (503) 947-4700
Fax (503) 947-4793
marc.abrams@doj.state.or.us
Of Attorneys for Defendant

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793