IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

MONICA EMELDI,                    )
                                  )
                Plaintiff,        )        Civil No. 08-6346-HO
                                  )
        v.                        )        <u>ORDER</u>
                                  )
UNIVERSITY OF OREGON, an Agency   )
and Instrumentality of the State  )
of Oregon,                        )
                                  )
                Defendant.        )
_____  )

     Plaintiff filed this action in the Circuit Court for the State of Oregon, County of Lane.  Plaintiff alleges three claims for relief: (1) Title IX retaliation; (2) violation  of ORS § 659.850; and (3) breach of contract. Defendant removed the action to this court and now seeks summary judgment as to all claims.

     In 2004, defendant, the University of Oregon, admitted plaintiff Monica Emeldi to the doctoral program at the University's College of Education (COE).  Dr. Edward Kame'enui advised plaintiff and chaired her dissertation committee.

Upon admission, plaintiff received financial aid from the Project Vanguard grant which was co-directed by Dr. Kame'enui and Dr. Robert Horner. Plaintiff agreed to perform service upon graduation in exchange for funding from Vanguard.

Beginning with the 2005-06 academic year, Dr. Kame'enui took a sabbatical from the COE with a return date in 2007. Dr. Horner agreed to take over as plaintiff's dissertation chair.

In May of 2007, plaintiff collected comments from several graduate students and penned a memo, as the group's representative, listing the concerns. The memo is two pages long and documents 15 recommendations by the graduate students to COE Dean Michael Bullis. The comments were collected to make recommendations regarding program improvement and "reflect the collective discussion and thought of eight doctoral students (female and male) across three cohorts." Doctoral Program Improvement Recommendations dated April 29, 2007 and May 3, 2007 (attached to Emeldi Deposition as Exhibit 18 which is attached to the Affidavit of Mark Abrams (#37)). The third comment recommended:

> Students request that qualified Women be hired into tenured faculty positions [emphasis]. Students attempted and were unable to identify a current female appointment to a tenured faculty position. Students need to experience empowered female role models successfully working within an academic context [emphasis]. Doctoral students request that the college model a balance of gender appointments that reflect the proportion of student gender population ratios.

2 - ORDER

Id.[1]

In October of 2007, plaintiff met with Marian Friestad, vice president for graduate studies, about concerns she had with her doctoral program.  Friestad states that no discussion related to sexual discrimination occurred.  Plaintiff's counsel, without any citation to the record, states that plaintiff described  one possible cause of the problems as an institutional bias in favor of male candidates and a relative lack of support and role models for female candidates.[2]  During this meeting a  discussion regarding plaintiff instituting a grievance against the University apparently took place.

On November 27, 2007, Dr. Horner, citing plaintiff's refusal to listen to him about necessary changes to her dissertation proposal, stopped serving as plaintiff's dissertation chair. Plaintiff contacted 15 other faulty members via e-mail, but was unable to recruit another professor to serve as chair.  Several of the faculty contacted cited being too busy and several others lacked the necessary qualifications to serve.  There were other

---

[1]It should be noted that at the time, there were six tenured female faculty members within the college of education including Marilyn Nippold in plaintiff's department.

[2]Although the court has no duty to search the record, plaintiff's counsel did submit an unsigned declaration in which she purportedly makes this statement.  Defendant has moved to strike the declaration which motion will be discussed below.  The declaration conflicts with plaintiff's written information to Friestad for the October meeting which does not include complaints regarding discrimination.  See Note to Marian Friestad (attached to Emeldi Deposition as Exhibit 29 which is attached to the Affidavit of Mark Abrams (#37)).

qualified faculty members that plaintiff did not approach.  In
addition, plaintiff did not contact Dr. Kame'enui who had returned
to the University by this time.

Plaintiff has completed all course work required and only
needs to complete her dissertation to complete her degree.
Plaintiff claims she is unable to find a qualified member to chair
her dissertation committee.  Her dissertation proposal remains
unapproved and uncompleted.

Plaintiff filed a grievance within the University system
contending that Dr. Horner's resignation was the commencement of a
sexist retaliation against her for the May 2007 memo.  Prior to
completion of the appeals process for the grievance, plaintiff
instituted this action.


A.   Title IX Claim

A cause of action for retaliation for complaints of sex
discrimination may be brought under Title IX.  Jackson v.
Birmingham Bd. of Educ., 544 U.S. 167, 183-84 (2005).  Title IX
should be analyzed under the same burden shifting scheme recognized
for Title VII cases.  See  Johnson v. Baptist Med. Ctr., 97 F.3d
1070, 1072 (8th Cir. 1996) (applying Title VII methodology to Title
IX discrimination claim);  Ray v. Henderson, 217 F.3d 1234, 1240
(9th Cir. 2000) (applying the burden-shifting scheme from McDonnell
Douglas to Title VII).  Thus, at this stage of the proceedings,
plaintiff must prove a prima facie case and, if she does so,

4 - ORDER

defendant must present legitimate non-discriminatory reasons for any adverse actions plaintiff suffered.  If defendant presents such reasons, plaintiff must then demonstrate that the reasons are a pretext for discrimination.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).

Plaintiff can establish a prima facie case of retaliation by showing she engaged in a protected activity, that she suffered an adverse action and a causal link between the two.  See Burch v. Regents of University of California, 433 F.Supp.2d 1110, 1126 (E.D. Cal. 2006).

The memo penned by plaintiff does not appear to qualify as protected activity.  Protected activity in this context involves complaints of discrimination.   The Burch court's discussion on this issue is probative where Burch advocated for a women's varsity wrestling team:

> This advocacy is not equivalent to a complaint of discrimination. Cf. Jurado v. Eleven-Fifty Corp., 813 F.2d 1406 (9th Cir. 1987) (holding that plaintiff failed to establish that he engaged in protected activity when he complained about the impact that an English-only rule would have on his reputation as a radio personality and only alleged that this same conduct was discriminatory after he was fired). Moreover, because establishing a women's wrestling team, as opposed to more varsity opportunities for women in general, was not required to comply with Title IX, the court cannot say that defendants should have interpreted plaintiff's inexact complaints as complaints of discrimination. Cf. Barber v. CSX Distrib. Servs., 68 F.3d 694, 702 (3d Cir. 1995) ("A general complaint of unfair treatment does not translate into a charge of illegal ... discrimination."). (See also Pl.'s SUF No. 39 (recognizing that "Title IX compares actual participation opportunities for males and females, not the number of sports")). Plaintiff may not be

5 - ORDER

required to use "magic words" to engage in protected
activity, but he did have an obligation to "at least say
something to indicate [that gender was] an issue."
[Footnote omitted] <u>Miller v. Am. Family Mut. Ins. Co.</u>,
203 F.3d 997, 1008 (7th Cir.2000); <u>Mayfield v. Sara Lee
Corp.</u>, No. C 04-1588, 2005 WL 88965, at *8 (N.D.Cal.
Jan.13, 2005) (recognizing plaintiff's duty to "alert[ ]
his employer to his belief that discrimination, not
merely    unfair    ...    treatment,    had    occurred").
Significantly, plaintiff has failed to point the court to
any declarations or testimony where he described under
oath how he objected to gender discrimination prior to
May, 2001. Meanwhile, Warzecka has declared that prior to
May, 2001, he did not construe any of plaintiff's
opinions on the plight of the female wrestlers as
allegations of gender discrimination.

<u>Id</u>. at 1127.[3]

The memo does not raise charges or allegations of gender
discrimination.  Plaintiff apparently also relies on the unsigned
declaration submitted by counsel to show she raised complaints of
gender discrimination.  Defendant moves to strike the declaration.
(#61).  Instead of filing an affidavit, plaintiff's counsel
submitted the declaration without a signature stating that
plaintiff gave him permission to "file the declaration using her
electronic signature, while she was out of state..."  Since oral
argument, plaintiff resubmitted the declaration with a signature
and the court will consider it.

Defendant also moves to strike the attachment to the original
declaration which is a 178 page summary of events which is
apparently a diary covering the period from July 2007 to end of

---

[3]Moreover, plaintiff testified at her deposition that the memo
did not reflect any illegal activity on the part of the University.

2009, because it was not produced in discovery.  There is some dispute as to whether a compact disc containing all entries listed in the summary of events diary was provided.  The motion to strike is denied, but the court will only consider admissible evidence. The declaration provides weak evidence of complaints of discrimination at best, plaintiff now contends that the University perceived her to have opposed illegal acts and is not relying solely on complaints of discrimination.

Defendant also contends that the University did not commit an adverse act.  This argument really goes to causation because if plaintiff's failure to obtain a chair for her dissertation committee is related to any perceived complaints of gender inequality, then the University has effectively terminated her from the program which is certainly adverse.

Causation may be established from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision. Miller v. Fairchild Indus., Inc., 797 F.2d 727, 731-32 (9th Cir. 1986).  There is no direct evidence of retaliation in this case.

As noted above, the alleged protected activity is borderline at best and thus, it is difficult if not impossible to infer causation even assuming knowledge.  However, plaintiff produces insufficient evidence of knowledge of the alleged activity on the part of Horner or other faculty members who declined to chair

plaintiff's dissertation committee. Plaintiff's counsel's argument with regard to Dr. Horner cites some deposition testimony that does not appear to have been produced in the record before the court,[4] but essentially states that Friestad met with Horner after the October 2007 meeting and told him plaintiff was contemplating filing a grievance, that Horner was told that plaintiff authored the May 2007 memo and that immediately thereafter, Horner withdrew as chair.

However, Horner testified that while he was told there was a memo, he was not told about the content and there is no indication from Friestad or Horner that Horner was informed of any complaints of harassment or discrimination. The only record support that plaintiff even made "complaints" of discrimination is her declaration. Plaintiff provides insufficient evidence to link knowledge of any such complaint to Horner. A trier of fact would not only have to accept that such complaints were made to Friestad, but speculate that Friestad relayed such complaints to Horner. The only admissible evidence in this regard is Horner's testimony and Friestad's testimony that there was no discussion related to discrimination. Even plaintiff herself stated when asked why she thought Dr. Horner's resignation was gender based responded, "I

---

[4]For instance, plaintiff cites the Dr. Horner's deposition at pp. 16-17 as evidence that Horner knew plaintiff had accused him of discriminating against her. The court cannot find any submission from plaintiff including Horner's deposition, and can only find page 16 in an attachment from defense counsel submitted in reply to plaintiff's opposition to the summary judgment motion See Document #59 at Ex. C.

would be speculating. I think that that's a question for Rob Horner." Emeldi Deposition at p. 260.[5]

The same is true for the other would-be dissertation chairs plaintiff contacted. Plaintiff can offer nothing more than speculation that she has been unable to find a chair based on any perception that she engaged in activity protesting gender discrimination at the University. Accordingly, the motion for summary judgment on plaintiff's Title IX claim is granted.

B.   ORS § 659.850 Claim

ORS § 659.850 prohibits unreasonable differentiation in treatment (in form or operation) based on sex. Plaintiff apparently intends to amend her complaint to make clear that this claim is also based on retaliation. Because plaintiff fails to present sufficient evidence of causation, this claim also necessarily fails.

C.   Breach of Contract

It is difficult to decipher plaintiff's breach of contract claim, but it appears she alleges that she was required to obtain a Ph.D. and satisfy service obligations in return for the Vanguard

---

[5]It should be noted that Dr. Horner, after resignation as plaintiff's dissertation chair, continued to work with plaintiff on a co-authored article.

9 - ORDER

funding and that the University breached the contract by not permitting her to complete that performance.

The alleged contract apparently is based on promises made by Dr. Kame'enui and that Kame'enui is an apparent agent of the University and thus the University is bound by the alleged contract.[6]

There are several problems with plaintiff's theory. There is no writing and thus the contract would violate the statute of frauds, ORS § 41.580. Plaintiff contends that equity should be applied to enforce the contract because it was partially performed. A party can be estopped from raising the statute of frauds when the person relying on the promise has acted to her detriment solely in reliance on an oral agreement. Engelcke v. Stoehsler, 273 Or. 937, 944 (1975). Plaintiff provides no evidence that she acted solely in reliance on the alleged oral agreement.[7]

Moreover, Dr. Kame'enui did not have apparent authority to bind the University. Plaintiff could not reasonably believe

---

[6]It is difficult to see how there is a breach even of plaintiff's construct of the alleged contract. She received funding for every year she attended the University. It appears that plaintiff is asserting perhaps some sort of interference with economic relations assuming she is asserting that she will have to pay the money back because she cannot provide the service she is allegedly required to provide.

[7]Plaintiff seeks to supplement the record with the Attorney General's review of the Bellotti matter to show that the University honors verbal agreements. The court grants the motion to supplement, but the University does not make the law concerning the statute of frauds and thus the materials do not favor plaintiff on the issue.

10 - ORDER

Kame'enui had authority to bind the University as she knew he was not an administrator and the University catalog, which plaintiff was familiar with, states that there is no contract between the student and the University. Moreover, plaintiff's admission letter stated that there was no guarantee of funding or support. Dr. Kame'enui's apparent authority to do any particular act can be created only by some conduct of the University which, when reasonably interpreted, caused plaintiff to believe that the University consents to have Dr. Kame'enui act for it on that matter. Wiggins v. Barrett & Associates, Inc., 295 Or. 679, 687-88 (1983).[8] Plaintiff must also rely on that belief. Id. at 688. Plaintiff claims Dr. Kame'enui engaged in some conduct to make her believe he had authority, but she points to no conduct on the part of the University which could have caused plaintiff to believe

---

[8]Moreover, a government actor can only be bound by the promise of its agent acting beyond the scope of actual authority if
    (a) the municipality clothes the agent with apparent authority, (b) the promise is one which the municipality could lawfully make and perform, (c) there is no statute, charter, ordinance, administrative rule, or public record that puts the agent's act beyond his authority, (d) the person asserting the authority has no reason to know of the want of actual authority, and (e) the municipality has accepted and retained the benefit received by the municipality in return for the promise.
Wiggens, 295 Or. at 683. Plaintiff does not address these elements. The Oregon administrative rules demonstrate the Dr. Kame-enui's authority is limited in this regard. See OAR § 580-004-005.

Kame'enui had authority, especially in light of the catalog to the contrary.[9]

The motion for summary judgment is granted as to all claims and the clerk shall issue a judgment in favor of defendant dismissing this action.


CONCLUSION

For the reasons stated above, plaintiff's motion to supplement the record (#69) is granted, defendant's motion to strike (#61) is denied, and defendant's motion for summary judgment (#34) is granted.  This action is dismissed.


DATED this ____4th____ day of June, 2010.

                          ___s/ Michael R. Hogan___
                          United States District Judge

---

[9]Plaintiff cites the Bellotti situation again, but that occurred after the alleged contract in this case, and thus plaintiff could not have relied on such conduct.

12 - ORDER